## Chicago, Peoria & St. Louis Railway Company of Illinois v. Samuel Willard.

1. ' CONTRIBUTORY NEGLIGENCE—*what is not.* One who spends his time in seeking to save a portion of his property from destruction by fire, and in attempting to prevent the spread of such fire, is not, by reason of such conduct, guilty of contributory negligence in not having herded his cattle and placed them in a position of safety.

2. DESTRUCTION FROM FIRE—*care to be exercised to prevent.* A person is required to exercise only such degree of care in seeking to preserve

his property from destruction by fire, as a reasonable man would exercise under like conditions and circumstances. Whether this degree of care has been exercised in any particular case, is a question of fact for the jury.

3. MEASURE OF DAMAGES—*where cattle are injured by fire.* The measure of damages where cattle have been injured by fire caused by the neglect of the defendant, is the difference in the value of the cattle before and at the time they were injured, and their value after such injury, and a mere *ex parte* statement, showing what the cattle of the plaintiff injured and uninjured sold for, is not competent upon the question of damages.

4. ADMISSION OF EVIDENCE—*when error in, is harmless.* An error in the admission of evidence is harmless where the fact which such incompetent evidence tends to prove has been established by other evidence which is both competent and uncontradicted.

5. PROXIMATE CAUSE—*what may be construed as.* Negligence may be the proximate cause of a particular injury, notwithstanding such injury is not reasonably to be anticipated from such negligence.

6. SPECIAL INTERROGATORIES—*to what must relate.* Special interrogatories must relate to the ultimate, as distinguished from the mere evidentiary facts, of the case; otherwise their refusal is proper.

7. " NEGLECT "—*how to be understood.* The word " neglect," as used in a special interrogatory, held, capable of implying an omission or failure merely, without regard to the question of legal negligence.

Action to recover damages for fire communicated from locomotive. Appeal from the Circuit Court of Tazewell County; the Hon. NICHOLAS E. WORTHINGTON, Judge, presiding. Heard in this court at the November term, 1902. Affirmed. Opinion filed December 8, 1903.

WILSON & WARREN and W. R. CURRAN, for appellant.

JESSE BLACK, Jr., and WILLIAM A. POTTS, for appellee.

MR. JUSTICE BAUME delivered the opinion of the court.

This was a suit brought by Samuel Willard against the Chicago, Peoria and St. Louis Railway, of Illinois, to recover damages to the lands and cattle of plaintiff by fire escaping from defendant's locomotives, communicating to dry grass and weeds, negligently allowed to accumulate on its right of way and thence to the lands of plaintiff. There was a verdict and judgment for plaintiff for $2,050, from which defendant appeals.

The facts in the case are substantially as follows: Plaintiff is the owner of lands in Tazewell County, used by him for grazing and agricultural purposes, through which lands

defendant has a right of way upon which it operates its railway. On July 16 or 17, 1901, the section gang of the defendant had cut grass and weeds on the right of way; the weather had been, and was for some time thereafter during that month, very dry and hot and the grass and weeds were permitted to lay as cut and in piles. On July 20, plaintiff discovered a fire on defendant's right of way, about eight o'clock in the morning, shortly after a passenger train had passed south. Plaintiff immediately went to Manito, about a mile distant, on foot, and notified a section foreman of defendant that the fire was in progress and requested him to look after it. Coombs, the section foreman, with a gang of men extinguished the blaze and returned to Manito. On plaintiff's return from Manito, he discovered the grass and weeds still burning and that the fire had communicated to his land. The land in that locality was drainage land consisting of peat soil, inflammable to a depth of from six inches to three feet and when once ignited it is impossible to extinguish the fire except by digging the soil out. There is evidence tending to show that from about noon until five or six o'clock in the evening, plaintiff and his men were engaged in plowing around stacks of grain and fields of growing grain, to prevent their destruction by the fire and in otherwise attempting to stay its progress. In the pasture field consisting of about 240 acres, eight acres of which were injured by the fire of July 20, plaintiff had about 140 head of cattle grazing. In the evening plaintiff had the cattle gathered in the milk pen and next morning when he went to feed them found from sixty to eighty-three head had been injured by having their hoofs and legs to the knees, singed and burned. On July 27, following, a fire from one of defendant's locomotives fired the accumulation of cut grass and weeds at another point on its right of way and communicated to plaintiff's land of the same peaty formation and burned over an area of about thirty acres to a depth of from six inches to three feet. It was for the damages suffered by plaintiff by these two fires that he brought suit and recovered a verdict.

It is insisted by appellant that appellee is precluded from

recovering damages in this case, because he did not extinguish the fires, as, it asserts, he easily could have done in their incipiency, and because he did not exercise reasonable care in securing his cattle from injury by the fire of July 20.

The evidence tends to show that when plaintiff first discovered the fire of July 20, it was beyond his ability to cope with single-handed; that he was about equally distant from his home where he might have procured help and the station Manito, where he could notify defendant's section gang, with the reasonable expectation that they would extinguish it, if possible; that while they smothered the blaze, they did not extinguish the fire so as to prevent its further spread; that on his return from Manito, plaintiff confronted the same situation as at first, and immediately with the assistance of his hired hands sought to protect his property and put out the fire. Because his time and labor was expended in saving the stacks of grain and growing crops on his lands, and in an effort to stay the progress of the fire in the land, rather than in herding his cattle, does not convict him of a want of reasonable care in neglecting to do the latter. He was obliged to exercise only such degree of care, in an effort to preserve his property, as a reasonable man would exercise under like surrounding conditions and circumstances. Whether he exercised such care in this particular case, was a question for the jury and has been settled by them adversely to appellant. That the fire when once communicated to the peat soil, could not be extinguished, is conceded by both parties in this case. How appellee can be held for negligence in failing to do an impossibility, we do not understand. Two gangs of defendant's section hands had failed to do, what appellant now insists, appellee should have done.

It is urged that the court allowed improper evidence to go to the jury on behalf of the plaintiff against the objection of defendant. Plaintiff was permitted to introduce in evidence as " Exhibit B," an " account sales," rendered by a commission firm in Chicago to plaintiff, of cattle, includ-

ing a portion of those injured by the fire, as evidence upon the question of the market value of the cattle so injured. The measure of damages in this case, so far as it related to the injured cattle, was the difference in the value of the cattle before or at the time they were injured and their value after such injury. The "account sales," was not competent evidence for any purpose, being merely an *ex parte* statement.

It presumed to establish the market value of the cattle on the day of their sale, August 20, one month after their injury, which was irrelevant to the inquiry in hand. The damage to the cattle was, however, fixed by the uncontradicted, competent evidence of several witnesses and there is nothing in the record to suggest that appellant was prejudiced by the error in admitting the incompetent evidence. It is further contended by appellant that there is no proof in the record to show that the injury sustained by the cattle was the result of fire communicated from defendant's right of way. This contention hardly bears discussion. Suffice it to say that there is evidence showing that the cattle were on appellee's land grazing; that the superficial peat-soil on eight acres of land was burned to a depth of from six inches to three feet; that the heat from such burning peat is intense and when in combustion cannot be quenched; that there is no evidence tending to show that the cattle were exposed to fire elsewhere.

It is urged by appellant that a recovery cannot be sustained in this case for injury to appellee's cattle, because such injury was not to have been reasonably foreseen or expected as the result of the setting of the fire, and that therefore the negligence of appellant in that regard cannot be said to be the proximate cause of the injury. In other words, appellant contends that negligence averred and proved cannot be said to be the proximate cause of a resulting injury, if that particular injury is not to be reasonably anticipated.

This is restricting the liability of a party for negligence within too narrow limits. In Fent v. Toledo, Peoria and

Warsaw R. R. Co., 59 Ill. 349, so far as the case involved the issue of remote or proximate cause, it was said : " The jury should be instructed that if the loss is a natural consequence of the alleged carelessness, which might have been foreseen by any reasonable person, the defendant is responsible, but is not to be held responsible for injuries which could not have been foreseen or expected as the result of the negligence." This language would seem to support the view contended for by appellant, but in the later case of Pullman Palace Car Co. v. Laack, 143 Ill. 242, the court in commenting on the *Fent case* and with reference to the language above quoted, said :

" This is not to be understood as requiring that the *particular result* might have been foreseen, for if the consequences follow in unbroken sequence from the wrong to the injury, without an intervening efficient cause, it is sufficient if at the time of the negligence the wrongdoer might, by the exercise of ordinary care, have foreseen that some injury might result from his negligence."

" If, therefore, the wrong of appellant put in motion the destructive agency, and the result is directly attributable thereto, and there was no intervention of a new force or power of itself sufficient to stand as the cause of the mischief, the negligence of the appellant must be considered the proximate cause of the injury, if it could be foreseen by the exercise of ordinary care that injury might or would result from the negligence."

In this case, the destructive agency put in motion by the wrong of appellant was fire escaping from its locomotive and the injury to appellee's cattle is directly attributable thereto, unless appellee was guilty of such contributory negligence as amounted to a new intervening cause of the injury.

Appellant must be held to have foreseen by the exercise of ordinary care, that fire from its locomotive would communicate to and burn the peat soil of appellee's land together with whatever might properly be on the land and it was not necessary to fix its liability, that it should have known that cattle were in fact grazing on the land.

It is urged that the court erred in refusing to submit to

the jury the following special interrogatories, asked on its behalf:

1. "Did Samuel E. Willard, plaintiff, neglect to put out the fire after he had discovered it starting to burn on the right of way on the morning of July 20, 1901?"

2. "Did Samuel E. Willard, plaintiff, neglect to put out the fire after he had discovered it starting to burn on the right of way on July 27, 1901?"

3. "Did Samuel E. Willard, plaintiff, permit his cattle to run in the field where the peat land was burning on his premises, after he discovered the fire had been communicated to those premises on July 20, 1901?"

These interrogatories relate to evidentiary facts and not to ultimate facts in the case. The jury might have answered all of them in the affirmative and yet not convicted appellee of contributory negligence. We have already adverted to the reasonable care required of appellee in preserving his property. The word "neglect" as used in interrogatories 1 and 2, may imply omission or failure merely, without negligence in law.

The jury were very fairly and fully instructed and the verdict is not excessive under the evidence. The judgment will be affirmed.                                    *Affirmed.*