Roman **EPELBAUM**, Administrator of the Estate of Mark Epelbaum, Plaintiff,

v.

**ELF ATOCHEM, NORTH AMERICA, INC., Defendant.**

No. Civ.A. 97–86.

United States District Court, E.D. Kentucky.

April 1, 1999.

**430**

Kenneth L. Sales, Kathleen L. Flynn, Segal, Isenberg & Sales, Louisville, KY, for plaintiff.

Thomas J. Birchfield, Michelle M. Ciccarelli, Luann Devine, Mark S. Riddle, Greenbaum, Doll & McDonald, P.L.L.C., Louisville, KY, for defendant.

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

This matter is before the Court on Defendant's motion for summary judgment [Record No. 73]. Plaintiff has responded [Record No. 79] to which Defendant has replied [Record No. 89]. Fully briefed, the Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

Defendant is the former employer of Plaintiff's deceased brother, Mark Epelbaum. Mark began working for defendant in June of 1993 as a lab technician. Plaintiff alleges that while Mark was employed by the defendant, he endured frequent ethnic jokes and derogatory comments about his Polish ancestry.[1] On October 10, 1996, Mark died from a self-inflicted gunshot wound to the head. It is Plaintiff's contention that the defendant is liable for creating and condoning a hostile work en-

1. In 1969, the Epelbaum family left Poland to come to America when Mark was thirteen years old.

vironment which was a substantial contributing factor in Mark's suicide.

## CONCLUSIONS OF LAW

Plaintiff presents three claims against the defendant. Said claims include a wrongful death action, the creation of a hostile work environment in violation of K.R.S. 344.040, and intentional infliction of emotional distress.[2]

### I. Applicable Standard

In deciding whether to grant summary judgment, the Court must view the facts presented in a light most favorable to the nonmoving party, which in this case is the plaintiff. *See Kocsis v. Multi–Care Management, Inc.*, 97 F.3d 876, 882 (6th Cir. 1996). If the Court finds that there is no genuine issue of material fact for the jury to consider, summary judgment may be granted. *See Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989).

### II. Plaintiff's claims

#### A. Wrongful death

Plaintiff first claim for wrongful death is brought under K.R.S. 411.130. Said statute permits a personal representative of the deceased to recover damages whenever the death "results from an injury inflicted by the negligence or wrongful act of another." *Id.* In order to recover, however, the act of the defendant must have "caused" the death of Plaintiff's brother. *See Watters v. TSR, Inc.*, 904 F.2d 378 (6th Cir.1990) The Kentucky courts have "long recognized that the chain of causation maybe broken by 'facts [that] are legally sufficient to constitute an intervening cause'". *Id.* at 383; *citing Montgomery Elevator Co. v. McCullough*, 676 S.W.2d 776, 780 (Ky.1984).

■ If a fact is so unforeseeable in character or is highly extraordinary in nature, it is considered an intervening cause and will relieve an original tortfeasor of liability to the ultimate victim. *See Watters*, 904 F.2d at 383. "Courts have been rather reluctant to recognize suicide as a proximate consequence of a defendant's wrongful act." *Id.* Furthermore, "the act of suicide is viewed as an independent intervening act which the original tortfeasor could not have reasonably [been] expected to foresee." *Id.* (citations omitted).

■ Several exceptions have been carved into the general rule that suicide is an intervening cause eliminating liability on the part of a wrongdoer. The first exception is "where a person known to be suicidal is placed in the direct care" of another owing a duty to protect the person from harm. *Id.* This custodial relationship does not exist in the case at bar. The second exception is found in workers compensation law and permits recovery when an injury sustained in the course of employment causes some type of "mental disorder sufficient to impair the worker's normal and rational judgment, where the worker would not have committed suicide without the mental disorder." *Id.* at 384. No such injury occurred here.

Finally, the third exception, which is the one argued by the plaintiff, is known as the irresistible impulse exception and occurs when a "decedent was delirious or insane and either incapable of realizing the nature of his act or unable to resist an impulse to commit it." *Id.* If the decedent was not known to be suicidal or having such mental affliction rendering him incapable of refraining from inflicting such harm upon himself, then the defendant cannot be liable. *See id.*

■ In the case at bar, neither the defendant, nor any employee of the defendant was aware that the decedent was suicidal. Decedent was a quiet and reserved man who chose not to share his feelings and emotions with his co-workers. In fact, he rarely, if ever, discussed his personal life at work. The record indicates that the decedent was never treated

**2.** The latter two of these claims are brought on behalf of the decedent.

for nor diagnosed with any mental condition or mental illness at any time during his life. Even Plaintiff, the decedent's older brother in frequent contact with the decedent, has stated that he, at no time, believed the decedent to be suicidal or a danger to himself.

Hence, this Court concludes that no material genuine issue of fact exists at to whether decedent's suicide was brought about by the alleged conditions he was facing while in the defendant's employ. Plaintiff's wrongful death claim must be dismissed for lack of causation.

### B. Hostile work environment

Pursuant to K.R.S. 344.040 *et seq.*, the Kentucky Civil Rights Act, Plaintiff asserts that the defendant subjected the decedent to intentional, illegal national origin discrimination and a hostile work environment. Plaintiff alleges that the atmosphere in the laboratory where the decent worked was permeated with discriminatory animus. Such animus is illustrated by the following remark in reference to the decedent by Darren Stephen, the decedent's co-worker who was to train decedent for a particular job: "if the dumb Pollack wanted to learn anything he was going to have to learn it himself because he wasn't teaching him." Additionally, Mike Gordon, another co-worker had allegedly stated to the decedent, "I don't care how many degrees you have; to me you're just a dumb Pollack." Other instances of "harassment" that occurred at the lab include the following:

(1) Co-worker Linda Davis testified that during decedent's first year, she recalled Gordon telling an ethnic joke which according to the defendant, was not directed at the decedent. She and the decedent walked away and did not actually hear the joke. Stephen testified that he recalled Gordon telling ethnic jokes. Bill Wilson also testified that he had heard Gordon telling ethnic jokes not directed at the decedent.

(2) Jackie Giles, an operator and co-worker of decedent, stated jokingly to decedent, on more than one occasion, "you dumb pollack, come and get this sample," to which the decedent regularly responded, "you gay American." According to Linda Davis, the two were joking.

(3) Pam Davis, an operator and co-worker of decedent, once stated to the decedent when he was carrying bottled water, "you're so dumb you even have to buy your water. . . . You don't know you can get water out of the fountain?"

(4) Pam Davis testified that in early 1995, she imitated decedent's accent, to which he responded "do not make fun."

Defendant argues that even if the above allegations are true, they are insufficient as a matter of law to constitute actionable ethnicity based harassment.

■ To prevail on a claim alleging a hostile work environment, Plaintiff must show that (1) decedent was a member of a protected class; (2) decedent was subjected to unwelcomed harassment; (3) the harassment was based on decedent's ethnicity; (4) the harassment unreasonably interfered with his work performance and created a hostile work environment; and (5) the defendant knew or should have known of the charged harassment and failed to implement prompt and appropriate corrective action. *See Blankenship v. Parke Care Centers, Inc.,* 123 F.3d 868, 872 (6th Cir.1997).

■ A hostile work environment is found to exist when it is permeated with "discriminatory intimidation, ridicule, and insult." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (internal quotes omitted). To assist the trial court with the evaluation of this concept, *Harris* provides us with the following factors: (1) the frequency of the discriminatory conduct; (2) the severity of said conduct; (3) whether the conduct is physically threatening or humiliating, or is a mere offensive utterance; and (4) wheth-

er the conduct unreasonably interferes with an employee's work performance. *See id.* at 23, 114 S.Ct. 367.

■ There is no dispute in the fact that the decedent's Polish ethnicity placed him in a protected class. Based on the comments of some of his co-workers, it appears that the decedent was also subject to harassment because of his Polish ancestry.

With regard to the fourth element in *Harris,* the Court finds that on at least one significant occasion, the harassment may have interfered with decedent's work performance. Darren Stephen, the person in charge of training decedent for a chemist position for which decedent was qualified, refused to train decedent and called him a "dumb Pollack" to his face.

The fourth element also requires the Court to use several factors in determining whether a hostile work environment exists. In terms of frequency and severity, Plaintiff's case appears weak when compared with Sixth Circuit case law. In *Black v. Zaring Homes, Inc.,* 104 F.3d 822 (6th Cir.1997), a case based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* upon which the Kentucky Civil Rights Act is modeled, the Sixth Circuit held that sexual remarks directed at a female employee approximately five to seven times over a four month period was not enough to establish a hostile work environment. According to the record, decedent was referred to as a "dumb Pollack" two to three times over a three year period.

*Abeita v. TransAmerica Mailings, Inc.,* 159 F.3d 246 (6th Cir.1998), found that the plaintiff had presented enough evidence to go to the jury on her hostile work environment claim where sexual comments and statements were "pervasive and widespread". *Id.* at 252. The ethnic jokes involving Polish ancestry that were told at decedent's place of employment were infrequent. The plaintiff states that jokes and teasing about females, African–Americans, and Asians, were quite common at decedent's workplace. However, in regard to Plaintiff's claims, this Court can consider only the references directly relating to the decedent in determining whether a hostile work environment existed. While the Court does not doubt that decedent was occasionally insulted based on ethnicity at his place of employment, a jury cannot objectively find that "severe and pervasive harassment" occurred. *Id.* at 248. Instead, the decedent experienced "mere offensive utterances as opposed to physically threatening or humiliating conduct." *Crawford v. Medina General Hospital,* 96 F.3d 830, 836 (6th Cir.1996) (internal quotes omitted).

Because Plaintiff is unable to meet all of the elements to form a prima facie case of hostile work environment, his claim must fail.

## C. Intention infliction of emotional distress

■ To support a claim for the intentional infliction of emotional distress upon decedent by the defendant, Plaintiff must prove the following:

(1) the wrongdoer's conduct must be intentional or reckless; (2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; (3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress must be severe.

*Humana of Kentucky, Inc. v. Seitz,* 796 S.W.2d 1, 2 (Ky.1990)

■ To avoid summary judgment, Plaintiff must establish a prima facie case containing each of the above elements. *See Pierce v. Commonwealth Life Ins. Co.,* 825 F.Supp. 783, 788 (E.D.Ky.1993). The Court finds that the defendant's conduct in this matter, though distasteful and inappropriate, was not "so outrageous in character, and so extreme in degree, as to go

beyond all possible bounds of decency." *Id.* Liability under the tort of intentional infliction of emotional distress does not extend to mere insults or indignities, and therefore Plaintiff's claim must fail. *Id.*[3]

### III. Conclusion

Plaintiff has presented no genuine issues of material fact to avoid summary judgment in the above-styled action. By dismissing these claims, the Court is by no means condoning the actions of the defendant's employees. The conclusions drawn by this Court reflect the lack of causation as to decedent's suicide and the high threshold required of Plaintiff as set forth by the Sixth Circuit. The Court finds that the occasional ethnic slurs used by Defendant's employees to be inappropriate and distasteful. However, statutes such as Title VII and the Kentucky Civil Rights Act were "not designed to purge the workplace of vulgarity." *Black,* 104 F.3d at 826 (internal quotes omitted). Likewise, these statutes were not intended to rid the workplace of bad taste.

Accordingly,

**IT IS ORDERED** that Defendant's motion for summary judgment be, and the same hereby is, **GRANTED.**

---

3. Defendant argues that Plaintiff's claim is preempted by K.R.S. Chapter 344, and therefore cannot be considered by this Court. Because this Court determined that Plaintiff's claim under said chapter could not survive summary judgment, the issue of preemption does not arise. Therefore, it is appropriate that the Court reach the merits of Plaintiff's emotional distress claim.