# Illinois Official Reports

## Appellate Court

<div style="border">

### *Turcios v. DeBruler Co.*, 2014 IL App (2d) 130331

</div>

| | |
|---|---|
| Appellate Court Caption | MARIA TURCIOS, Individually and as Special Administrator of the Estate of Nelsyn Caceres, and ALICE CACERES-ORTIZ and NELSYN CACERES-ORTIZ, by Maria Turcios, Their Mother and Next Friend, Plaintiffs-Appellants, v. THE DeBRULER COMPANY, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-13-0331 |
| Filed | June 11, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from the suicide of plaintiff's decedent as an alleged result of defendant's intentional infliction of emotional distress by forcing decedent and his family to vacate the apartment they had validly rented from defendant in order to accommodate defendant's decision to demolish the building in which the apartment was located, the dismissal of the wrongful death and survival counts of plaintiff's complaint with prejudice on the ground that there was no cause of action under Illinois law for wrongful death or survival claims via suicide was vacated and the cause was remanded to allow the trial court to reconsider its decision, since a victim's suicide is not, as a matter of law, an intervening cause that allows defendant to escape liability and does not limit defendant's liability in a case of intentional infliction of emotional distress when the emotional distress is a substantial factor in causing the suicide. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 12-L-4; the Hon. Margaret J. Mullen, Judge, presiding. |
| Judgment | Vacated and remanded. |

Counsel on
Appeal

Richard D. Grossman, of Law Offices of Richard D. Grossman, of Chicago, for appellants.

Stephen A. Rehfeldt, of Mulherin, Rehfeldt & Varchetto, P.C., of Wheaton, for appellee.

Panel

JUSTICE HUDSON delivered the judgment of the court, with opinion.
Justices McLaren and Jorgensen concurred in the judgment and opinion.

**OPINION**

## I. INTRODUCTION

¶ 2    Plaintiffs Maria Turcios (both individually and in her capacity as special administrator of the estate of Nelsyn Caceres) and Alice and Nelsyn Caceres-Ortiz (by their mother and next friend, Maria Turcios) appeal an order of the circuit court of Lake County dismissing two counts of their five-count complaint[1] (counts IV and V) against defendant, the DeBruler Company. Count IV was a wrongful death action and count V was a survival action. The trial court dismissed both counts, as they were premised on decedent Nelsyn Caceres's suicide, which, the complaint alleged, was the result of defendant's intentional infliction of emotional distress. For the reasons that follow, we vacate the trial court's order dismissing counts IV and V and remand for further proceedings.

## II. BACKGROUND

¶ 4    Plaintiffs' complaint alleged, in pertinent part, as follows. Maria Turcios and Nelsyn Caceres (a/k/a Ricardo Ortiz) had three children together. Two of the children, Alice and Nelsyn, lived with them. When the complaint was filed, Maria was 35 years old. She is a Honduran immigrant and does not speak English fluently.

¶ 5    On April 20, 2011, Maria and Nelsyn signed a lease for an apartment located in a complex known as the Colonial Park Apartments in Park City. The period of the lease was from May 1, 2011, to April 30, 2012. They tendered the required security deposit, paid the first month's rent, and moved in.

¶ 6    On May 10, 2011, they received a notice from defendant stating that they were being evicted and that they had 30 days to vacate the apartment. The complaint further alleged that nothing in the lease allowed defendant to unilaterally terminate the lease. Maria and Nelsyn sought legal advice and were informed that the lease was valid. They also contacted Catholic

---

[1]Jurisdiction is proper pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010).

Charities, which had previously assisted them in leasing the apartment. A case manager, Juan Barrera, contacted Gilena Borkoski (an agent of defendant). Borkoski stated that the lease was not valid and could be revoked at any time. From May 12 to May 18, defendant called Maria and Nelsyn, pressuring them to move. They received a letter on May 20, stating that the building they were living in would be demolished beginning on June 10, 2011. On May 31, they received another notice stating that the last day they could be in their apartment was June 9, 2011. It also stated that the washers and dryers would be removed on May 31, and it offered them one week of free rent.

¶ 7 On June 1, Maria and Nelsyn attempted to pay the rent, but defendant declined to accept it. They also went to see Barrera. Barrera's notes from that meeting state that Maria and Nelsyn were experiencing depression, anxiety, and anger over the matter. They were fatigued from lack of sleep.

¶ 8 On June 7, Maria and Nelsyn received another notice informing them that the building would be demolished. It offered to provide them with another unit, free, for 30 days. They again met with Barerra on June 10. His notes indicate, *inter alia*, that Maria and Nelsyn were "extremely upset." Their children were "very tense and would cry all the time." Borkoski offered them $2,000 to move. Nelsyn called Barrera later that day and told him that defendant's agents had ordered them to move "ASAP."

¶ 9 The complaint continued, "After June 10, 2011, despite Maria and her family's occupancy of the apartment, [d]efendant allowed demolition to proceed around Maria's unit." It stated, "The demolition company tore into the outside walls of the building in which Maria's unit was located, and then began to demolish the units surrounding Maria's unit." On June 14, Nelsyn told Maria that he could not tolerate the situation any longer but did not know what to do. On June 15, Nelsyn committed suicide in the apartment. He left a note stating, "Please forgive me my daughters, and you also Carmen. Sell the land and build the house."

¶ 10 Maria and her children moved in with a friend the next day. They left most of their belongings in the apartment. Defendant contacted Maria on June 21 and, despite her husband's recent death, informed Maria that she had to remove all of her belongings from the apartment, as demolition of her apartment would commence on June 22. On June 22, the demolition crew began to demolish Maria's apartment. She and her children "packed their belongings and began to move out that day, even though the stairs to their 3rd floor apartment had been mostly demolished." As they were moving, an "enormous rain storm occurred and ruined most of Maria's family's belongings."

¶ 11 As a result of these events, Maria "has fallen into a very deep depression." Her health has significantly deteriorated. She is prone to fits of sobbing.

¶ 12 Plaintiffs' complaint alleged five counts: (1) intentional infliction of emotional distress; (2) wrongful eviction; (3) breach of contract; (4) wrongful death; and (5) survivorship. The fourth and fifth counts incorporated the allegations set forth above. The fourth count went on to allege that "as a result of the wrongful acts of [d]efendant described above, Nelsyn Caceres committed suicide." It did not expressly allege a mental state except in the prayer for relief in connection with a claim for punitive damages. The fifth count alleged, *inter alia*, "Defendant's conduct in forcing Nelsyn Caceres and his family out of their validly-rented apartment by demolishing the building around them and then demolishing the rented premises even while he was living there, *in reckless pursuit of an economic goal*, is extreme

- 3 -

and outrageous conduct which cannot be tolerated in a civilized society." (Emphasis added.) The trial court dismissed with prejudice the final two counts pursuant to section 2-615 of the Civil Practice Law (735 ILCS 5/2-615 (West 2012)). The trial court flatly held that, under Illinois law, "there is no cause of action for wrongful death via suicide, or survival claims." We disagree with the trial court.

¶ 13                                    III. ANALYSIS
¶ 14                          A. Background Legal Principles
¶ 15        As a threshold matter, since this appeal comes to us following a dismissal pursuant to section 2-615 of the Civil Practice Law (735 ILCS 5/2-615 (West 2012)), our review is *de novo*. *Interstate Bankers Casualty Co. v. Hernandez*, 2013 IL App (1st) 123035, ¶ 8. Since review is *de novo*, we owe no deference to the trial court. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 595 (2011). A motion to dismiss in accordance with section 2-615 "challenges the sufficiency of the pleadings and the court determines whether the allegations of the complaint, construed in the light most favorable to the nonmoving party and taking all well-pleaded facts as true, are sufficient to state a cause of action upon which relief may be granted." *Gibbs v. Blitt & Gaines, P.C.*, 2014 IL App (1st) 123681, ¶ 10. Moreover, we construe "the pleadings and any supporting documentary evidence in the light most favorable to the nonmoving party." *Id.*

¶ 16        The trial court concluded that, because plaintiffs' decedent's death was the result of a suicide, plaintiffs could not maintain either a wrongful death or a survival action against defendant as a matter of law. This is undoubtedly the case in an action based upon a defendant's negligence. See *Luss v. Village of Forest Park*, 377 Ill. App. 3d 318, 332-33 (2007). The rationale for this rule is that the decedent's suicide is an " 'independent intervening event that the tortfeasor cannot be expected to foresee.' " *Crumpton v. Walgreen Co.*, 375 Ill. App. 3d 73, 79 (2007) (quoting *Chalhoub v. Dixon*, 338 Ill. App. 3d 535, 539-40 (2003)). However, plaintiffs point out that they have alleged an intentional tort. As such, they reason, an intervening-cause analysis is inappropriate in this case. See *Department of Law Enforcement v. Willis*, 61 Ill. App. 3d 495, 499 (1978). Of course, "[i]ntentional torts and negligence are distinct causes of action." *Topps v. Ferraro*, 235 Ill. App. 3d 43, 52 (1992) (Doyle, J., dissenting). Indeed, plaintiffs cite a number of cases from foreign jurisdictions that draw a distinction between negligence and intentional torts in cases where the defendant's actions cause emotional distress that leads to a suicide.

¶ 17                                 B. Foreign Authority
¶ 18        In *Clift v. Narragansett Television L.P.*, 688 A.2d 805, 812 (R.I. 1996), for example, the Supreme Court of Rhode Island held that "[t]he analysis of whether a defendant is liable for a suicide allegedly caused by intentional conduct differs from the analysis of liability for negligent conduct because there is no superseding-cause concept applicable to intentional torts." Likewise, the New Hampshire Supreme Court has observed:

> "The law of torts recognizes that a defendant who intentionally causes harm has greater culpability than one who negligently does so. [Citations.] When the wrong alleged is intentional, the defendant 'is responsible for the injuries directly caused even though they may be beyond the limits of foreseeability,' proof of which is required in a negligence action. [Citation.] In most cases of intentional torts '[t]he

defendant's liability for the resulting harm extends … to consequences which the defendant did not intend, and could not reasonably have foreseen, upon the obvious basis that it is better for unexpected losses to fall upon the intentional wrongdoer than upon the innocent victim.' [Citations.]" *Mayer v. Town of Hampton*, 497 A.2d 1206, 1209-10 (N.H. 1985).

Thus, the *Mayer* court held, "New Hampshire law does recognize an exception to the general rule that there is no cause of action for wrongful death by suicide where the conduct of the defendant was an intentional tort and extreme and outrageous, and where this conduct caused severe emotional distress on the part of the victim which was a substantial factor in bringing about the victim's ensuing suicide." *Id*. at 1211.

¶ 19 The Supreme Court of Wyoming has stated:

"We choose not only to adopt the substantial factor test articulated in *Tate* but also to extend the rule of that case to encompass a situation in which an actor will be liable when he intentionally commits a tort, in this case sexual assault, and the commission of that tort causes an emotional or psychiatric illness which is a substantial factor in bringing about the suicide of the victim. We hold that the actor will be liable for the result even though he does not intend to cause the emotional or psychiatric illness. The substantial factor rule recognizes that a higher degree of responsibility exists for those who commit intentional acts than for those who merely act negligently." *R.D. v. W.H.*, 875 P.2d 26, 31 (Wyo. 1994).

The *Tate* case to which the Wyoming Supreme Court referred was the California case of *Tate v. Canonica*, 5 Cal. Rptr. 28 (Cal. Dist. Ct. App. 1960). There, the court held that "in a case where the defendant intended, by his conduct, to cause serious mental distress or serious physical suffering, and does so, and such mental distress is shown by the evidence to be 'a substantial factor in bringing about' [citation] the suicide, a cause of action for wrongful death results, whether the suicide was committed in a state of insanity, or in response to an irresistible impulse, or not." *Id*. at 36. Numerous courts have come to similar conclusions. See *Rowe v. Marder*, 750 F. Supp. 718, 723-24 (W.D. Pa. 1990) ("While there is some uncertainty with respect to acts of negligence, it is plain that where suicide results from an intentional wrong, 'the trend of recent cases is toward allowing recovery.' " (quoting 1 Stuart M. Speiser, Wrongful Death 85 (1975 and 1989 Supp.))); see *North Shore Pharmacy Services, Inc. v. Breslin Associates Consulting LLC*, 491 F. Supp. 2d 111, 134 (D. Mass. 2007) ("It is up to the jury to decide, 'from its own experience,' whether the evidence is sufficient to meet the elements of the cause of action, including whether 'the emotional distress was severe and of such a nature that no reasonable person could be expected to endure it.' *McCarthy [v. Szostkiewicz]*, 188 F. Supp. 2d [64,] 72 [(D. Mass. 2002)]. The fact that a party committed suicide does not alter the jury's role."); see also Allen C. Schlinsog, Jr., *The Suicidal Decedent: Culpable Wrongdoer or Wrongfully Deceased?*, 24 J. Marshall L. Rev. 463, 471 n.32 (1991) ("If the suicide is a result of an intentional tort, the mere fact that the decedent is a wrongdoer will not prevent liability. This is because the tortfeasor is also a wrongdoer. Therefore, because the tortfeasor is equally as culpable as the decedent, public policy does not warrant protection for the tortfeasor. Where the injuries are intentionally inflicted, liability will generally run to the tortfeasor.").

¶ 20 In *Kimberlin v. DeLong*, 637 N.E.2d 121, 126 (Ind. 1994) (citing 74 Am. Jur. 2d *Torts* § 27, 642-43), the Indiana Supreme Court noted, "In determining whether to allow a victim's

- 5 -

subsequent suicide to insulate a wrongdoer from liability for his actions, other jurisdictions and authorities have distinguished between defendants whose actions were merely negligent and those whose conduct was intentional." It explained:

> "The rule that to render one liable for an injury to another resulting from a wrongful act, the injury must have been the proximate consequence of such act, which is applied strictly where the act or omission resulting in the injury is merely negligence, is relaxed in its application so as to cover a wider field of resulting injuries where the act is a wilful or malicious tort, as distinguished from mere negligence." *Id.*

It continued that, "[i]n cases involving unlawful acts, intervening causes are especially likely not to be held to preclude liability of the wrongdoer." (Internal quotation marks omitted.) *Id.* Liability for an intentional tort is not limited by foreseeability, so that unexpected losses fall on the intentional wrongdoer rather than an innocent victim. *Id.* Accordingly, the *Kimberlin* court held "that an action may be maintained for death or injury from a suicide or suicide attempt where a defendant's willful tortious conduct was intended to cause a victim physical harm and where the intentional tort is a substantial factor in bringing about the suicide." *Id.* at 128.

¶ 21    In *Collins v. Village of Woodridge*, 96 F. Supp. 2d 744 (N.D. Ill. 2000), a federal court interpreting Illinois law came to a similar conclusion. The court first recognized the rule that "with limited exceptions, the suicide of a person injured by the defendant's negligence constitutes an independent supervening cause cutting off the defendant's liability." *Id.* at 755 (citing *Little v. Chicago Hoist & Body Co.*, 32 Ill. 2d 156 (1965)). Those "limited exceptions" generally consist of situations where a decedent was unable to control his or her conduct, such as insanity, as a result of the tortious act. *Id.* at 755-56 (citing *Moss v. Meyer*, 117 Ill. App. 3d 862, 865 (1983)). The court then observed:

> "Neither side has cited any cases addressing whether the same causation analysis applies in intentional tort cases. In fact, the rule appears to be different in such cases: the tort victim's suicide generally is not considered a supervening cause, at least where the plaintiff can demonstrate that the defendant's intentional conduct caused severe emotional distress that was a substantial factor in bringing about the suicide." *Id.* at 756.

The court then held:

> "Defendants have only addressed this issue in terms of the Illinois standard referenced earlier, arguing that [the decedent's] suicide was, as a matter of law, a supervening cause cutting off their liability. For the reasons stated above, we do not believe this standard correctly states the governing law and thus reject defendant's [*sic*] argument." *Id.*

Though not binding on this court (*Wilson v. County of Cook*, 2012 IL 112026, ¶ 30), we find it persuasive that a federal court sitting in this jurisdiction and applying the law of this state has found that a cause of action exists under circumstances similar to those that confront us.

¶ 22                                C. Illinois Law

¶ 23    In addition to this general trend of authority in this nation (but see *Epelbaum v. Elf Atochem, North America, Inc.*, 40 F. Supp. 2d 429 (E.D. Ky. 1999)), Illinois law provides

support for plaintiffs' position. It is true that no Illinois court has passed directly upon this question; it is further true that, in the realm of negligence, suicide is generally regarded as an intervening cause (*e.g.*, *Luss*, 377 Ill. App. 3d at 332-33). Nevertheless, Illinois case law on related issues illuminates the issue as it pertains to intentional torts and indicates that the rule developed in the context of negligence should not apply here.

¶ 24 One such area concerns the nature of damages for the tort of intentional infliction of emotional distress. This tort does not allow for the recovery of punitive damages. *O'Neill v. Gallant Insurance Co.*, 329 Ill. App. 3d 1166, 1179 (2002). The supreme court has explained, "Since the outrageous quality of the defendant's conduct forms the basis of the action, the rendition of compensatory damages will be sufficiently punitive." *Knierim v. Izzo*, 22 Ill. 2d 73, 88 (1961). Thus, despite being classified as compensatory damages, damages awarded pursuant to the tort of intentional infliction of emotional distress have a punitive element. It is unclear to us how the fact that a defendant's conduct was a substantial factor in driving a tort victim to suicide should diminish the defendant's culpability such that damages that are punitive are inappropriate and liability should be limited as a matter of law.

¶ 25 Another such area concerns contributory negligence. The doctrine of contributory negligence does not apply when a defendant commits an intentional tort. *Willis*, 61 Ill. App. 3d at 499. Contributory negligence is a species of intervening cause. See *Chicago, Peoria & St. Louis Ry. Co. of Illinois v. Willard*, 111 Ill. App. 225, 230 (1902) ("In this case, the destructive agency put in motion by the wrong of appellant was fire escaping from its locomotive and the injury to appellee's cattle is directly attributable thereto, *unless appellee was guilty of such contributory negligence as amounted to a new intervening cause of the injury*." (Emphasis added.)). Thus, we do not ordinarily engage in an intervening-cause analysis when an intentional tort is at issue. By analogy, then, we see little reason to engage in an analysis regarding the decedent's suicide that is premised in notions of intervening cause.

¶ 26 We also note that the substantial-factor test already exists in Illinois tort law, though it has not been applied in the present context. It is typically regarded as a way of analyzing cause in fact. See, *e.g.*, *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 404 (2004); *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 455 (1992); *Thacker v. UNR Industries, Inc.*, 151 Ill. 2d 343, 354-55 (1992). Hence, the substantial-factor test is not completely foreign to Illinois law.

¶ 27 D. The Restatement

¶ 28 Moreover, the Restatement (Second) of Torts does not support a rule that would allow a defendant to escape liability in cases like this one. Section 46 of the Restatement is titled "Outrageous Conduct Causing Severe Emotional Distress" (Restatement (Second) of Torts § 46 (1965)) and it sets forth the following elements of the tort:

"(1) One who by extreme and outrageous conduct intentionally recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

(2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress

(a) to a member of such person's immediate family who is present at the time,

whether or not such distress results in bodily harm, or

(b) to any other person who is present at the time, if such distress results in bodily harm."

Nowhere in this articulation of the tort is there any mention of legal cause, foreseeability, or intervening events. Liability is based on a defendant intentionally or recklessly causing emotional distress and damages resulting from the emotional distress. Note that the tortfeasor is liable for not only the emotional distress itself, but also any "bodily harm to the other [that] results from it." This section has been applied by our supreme court. See *Public Finance Corp. v. Davis*, 66 Ill. 2d 85, 88-92 (1976).

## E. The Weight of Authority

Thus, the weight of foreign authority, related principles of Illinois law, and the Restatement (Second) of Torts all disfavor a rule allowing a defendant to escape liability for an intentional wrongful act that proximately causes emotional distress that is a substantial factor in bringing about a suicide. We note that the parties frame this appeal as a request by plaintiffs for us to adopt the substantial-factor test followed by other jurisdictions in cases where a defendant's tortious conduct is a substantial factor in a suicide. In actuality, if we were to hold that the decedent's suicide limits defendant's liability in this case, we would be extending a rule from the realm of negligence and applying it to damages flowing from the tort of intentional infliction of emotional distress in a manner it has never been applied in Illinois. As we see it, there is no special substantial-factor test pertaining to suicide cases. Rather, regarding intentional torts, liability would follow under ordinary principles of tort law in cases like the present unless it were limited by some other rule, such as the intervening-cause rule.

## F. Defendant's Arguments on Causation

Defendant contends, however, that such a rule already exists in Illinois law. Defendant asserts that, in this state, liability for all torts, both intentional and negligent, is limited by the concept of proximate cause. Proximate cause contains two elements: cause in fact and legal cause. *Crumpton*, 375 Ill. App. 3d at 79. Legal cause, at issue in this case, turns on the foreseeability of the type of harm a reasonable person would expect from his or her conduct. *Id*. As noted previously, in the context of negligence, a victim's suicide is deemed unforeseeable as a matter of law. *Luss*, 377 Ill. App. 3d at 332-33. Defendant argues that, since the concept of proximate cause also applies to intentional torts, defendant is not liable for the decedent's suicide in this case. That is, according to defendant, the decedent's suicide is an intervening cause breaking the chain of legal causation.

We do not agree with defendant's underlying premise that the concept of legal cause acts as a limitation on a defendant's liability for all types of intentional torts. Defendant does, however, set forth cases that support its position. They generally fall into either of two categories. The first such group is exemplified by *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33 (1994). *Martin* was a case brought, in part, under the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1979, ch. 121½, ¶ 261 *et seq.*). *Martin*, 163 Ill. 2d at 38. Defendant contends that the supreme court held in *Martin* that all torts, including intentional ones, require a proximate-cause analysis. Defendant reads too much into *Martin*. Undoubtedly, the *Martin* court stated, "As has been more recently noted by our

appellate court in an action for an intentional tort, fraud: 'damages *** must be a proximate, and not remote, consequence of the fraud.' (*Brown v. Broadway Perryville Lumber Co.* (1987), 156 Ill. App. 3d 16, 25; see also W. Prosser, Torts § 110, at 732 (4th ed. 1971) ('the damage upon which a deceit action rests must have been "proximately caused" by the misrepresentation').)" *Id.* at 59. We note that *Brown*, 156 Ill. App. 3d at 22, upon which the supreme court relied, also involved fraud, as did the supreme court's citation to Prosser. Moreover, the supreme court was addressing "an intentional tort, fraud." *Martin*, 163 Ill. 2d at 59. The natural reading of this passage is that the supreme court was addressing a particular intentional tort, namely fraud–a broader ruling concerning all intentional torts, in the context of a fraud case, would have been mere *dicta*. *Bulger v. Chicago Transit Authority*, 345 Ill. App. 3d 103, 115 (2003).

¶ 34        The other cases relied on by defendant that fall into this category are similarly distinguishable. In *Prodromos v. Everen Securities, Inc.*, 389 Ill. App. 3d 157, 159 (2009) (quoting *Prodromos v. Everen Securities, Inc.*, 341 Ill. App. 3d 718, 725 (2003), quoting *Martin*, 163 Ill. 2d at 59), the First District stated, "In addition, we noted that plaintiff had to show that defendants' actions were the proximate cause of his injuries, ' "even in instances of intentional torts where fiduciaries are involved." ' " Again, the natural reading of "intentional torts where fiduciaries are involved" is that "where fiduciaries are involved" is a limiting descriptor of "intentional torts." This is particularly true given that the case, like *Martin*, involved fraud. *Id.* at 158. In *Duffy v. Orlan Brook Condominium Owners' Ass'n*, 2012 IL App (1st) 113577, ¶ 17, the court held that to state a claim for a breach of a fiduciary duty a plaintiff must plead "the existence of a fiduciary duty, the breach of that duty, and damages proximately caused therefrom." Though a breach of a fiduciary duty is not fraud (which, parenthetically, *Duffy* did involve (*id.* ¶ 1)), we cannot read *Duffy* as expanding the rule from *Martin* such that all intentional torts require a showing of legal causation. Notably, defendant cites no case where such a showing was required for one of the traditional intentional torts, such as battery or trespass to land. In short, we do not find defendant's reliance on cases involving fraud or breach of fiduciary duty persuasive under the present circumstances.

¶ 35        The other category of cases relied on by defendant actually address the tort of intentional infliction of emotional distress and make statements such as "the defendant's conduct actually and proximately caused the plaintiff's emotional distress." See, *e.g.*, *Ulm v. Memorial Medical Center*, 2012 IL App (4th) 110421, ¶ 39; *Knysak v. Shelter Life Insurance Co.*, 273 Ill. App. 3d 360, 370 (1995); *Van Duyn v. Smith*, 173 Ill. App. 3d 523, 530 (1988) (citing *Debolt v. Mutual of Omaha*, 56 Ill. App. 3d 111, 113 (1978)). We believe it best to read such cases as meaning exactly what they say: a plaintiff must show that the defendant's conduct *proximately caused the plaintiff's emotional distress*. They do not say that a plaintiff must show that all resulting and compensable damages were proximately caused by the defendant.

¶ 36        That our reading is correct is made clear by the formulations of the elements of intentional infliction of emotional distress set forth in other cases. For example, in *Adams v. Sussman & Hertzberg, Ltd.*, 292 Ill. App. 3d 30, 38 (1997), the court stated:

> "To prove a cause of action for intentional infliction of emotional distress, the plaintiff must establish three elements: (1) extreme and outrageous conduct; (2) intent or knowledge by the actor that there is at least a high probability that his or her

conduct would inflict severe emotional distress and reckless disregard of that probability; and (3) severe emotional distress."[2]

Here, foreseeability (*i.e.*, knowledge of the probability of resulting distress) is set forth in a separate element pertaining only to the causation of the emotional distress. Other cases contain similar formulations of the tort. See, *e.g.*, *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 20 (1992); *Schroeder v. RGIS, Inc.*, 2013 IL App (1st) 122483, ¶ 27. These cases simply restate the well-established rule that a defendant's conduct must be the proximate cause of the plaintiff's *emotional distress*; they say nothing about *damages* generally. Hence, they provide little guidance here.

¶ 37                                G. Holding on Causation

¶ 38     Accordingly, we will not extend to intentional torts the bar on recovery based on a victim's suicide that exists in negligence cases. Under Illinois law, we generally do not employ an intervening-cause analysis in cases involving intentional torts, since, with a few exceptions like fraud, we do not require a showing of legal cause when an intentional tort is at issue. The weight of foreign authority, as well as the Restatement (Second) of Torts, supports this view. Finally, defendant has pointed to nothing in Illinois law or anywhere else that persuades us to do otherwise. We therefore hold that, in the case of the tort of intentional infliction of emotional distress, the fact that a victim commits suicide in no way limits a defendant's liability for its actions where the emotional distress is a substantial factor in causing the suicide. That is, we decline to extend to the tort of intentional infliction of emotional distress the *per se* bar on recovery for negligence where a victim commits suicide; instead we allow the jury to consider the issue of causation (where properly raised) as a question of fact.

¶ 39     We wish to emphasize the narrow scope of our holding. The trial court dismissed the two counts at issue here as a matter of law, holding that, "[u]nder Illinois law, there is no cause of action for wrongful death via suicide, or survival claims." We hold, to the contrary, that where a plaintiff can satisfy the elements of the tort of intentional infliction of emotional distress and the emotional distress is a substantial factor in causing a decedent's suicide, such causes of action are cognizable in this state. Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994) allows us to enter any order that the circumstances of a case require. Here, we deem it best to vacate the trial court's order and allow that court to reconsider its decision in light of this opinion. Ruling on a motion to dismiss pursuant to section 2-615 often involves discretionary decisions by the trial court, namely, whether to permit amendment. *Hume & Liechty Veterinary Associates v. Hodes*, 259 Ill. App. 3d 367, 370 (1994). As such, the trial court is in a better position to address these issues. We express no opinion on the sufficiency

---

[2]We note the apparent anomaly whereby *intentional* infliction of emotional distress can be proven where a defendant acts with knowledge of a high probability of causing severe emotional distress plus reckless disregard of that probability. In *Public Finance Corp. v. Davis*, 66 Ill. 2d 85, 88-90 (1976), the supreme court expressly held that the tort of intentional infliction of emotional distress can be proven where these mental states exist. The elements contained in *Adams*, 292 Ill. App. 3d at 38, which we set forth above, have been applied in numerous other cases. See, *e.g.*, *Duffy*, 2012 IL App (1st) 113577, ¶ 36; *Ulm*, 2012 IL App (4th) 110421, ¶ 39; *Cohen v. Smith*, 269 Ill. App. 3d 1087, 1094 (1995); *Van Duyn*, 173 Ill. App. 3d at 530; *Debolt*, 56 Ill. App. 3d at 113.

of plaintiffs' complaint, and defendant remains free to renew its motion to dismiss on any basis other than the decedent's suicide precluding plaintiffs' causes of action in counts IV and V as a matter of law.

¶ 40    Finally, before leaving this issue, we note that the tort of intentional infliction of emotional distress can be proved in several ways. As noted above, its elements are as follows:

"To prove a cause of action for intentional infliction of emotional distress, the plaintiff must establish three elements: (1) extreme and outrageous conduct; (2) intent or knowledge by the actor that there is at least a high probability that his or her conduct would inflict severe emotional distress and reckless disregard of that probability; and (3) severe emotional distress." *Adams*, 292 Ill. App. 3d at 38.

Notably, the second element can be satisfied in two ways, intent or knowledge plus reckless disregard. Thus, it is not strictly necessary to prove intent in all cases (we emphasize that the tort of intentional infliction of emotional distress is at issue in this appeal, and nothing in this opinion applies to the tort of negligent infliction of emotional distress). We hold, nevertheless, that under either scenario, a decedent's suicide is not, as a matter of law, an intervening cause that allows a defendant to escape liability. We point out that in either case a plaintiff must still establish that a defendant engaged in extreme and outrageous conduct, which has been defined as conduct that is "so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community." *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 274 (2003). The rationale for allowing recovery where a suicide results from an intentional tort is based on the heightened culpability of the intentional tortfeasor. See *Mayer*, 497 A.2d at 1209. The same logic applies where the tortfeasor engages in conduct "beyond all possible bounds of decency" and with knowledge and reckless disregard of the likely consequences.

¶ 41                          H. Defendant's Alternate Arguments

¶ 42    Defendant contends, in the alternative, that plaintiffs cannot prevail "under the substantial factor rule." Unconvincingly, defendant then argues that, under the law of the states that have adopted the so-called substantial-factor rule, plaintiffs' claims would fail. For example, defendant argues that plaintiffs' claims would fail under New Hampshire law, under which one version of the substantial-factor rule exists. See *Mayer*, 497 A.2d at 1211. This is because, according to defendant, its conduct would not be considered "extreme and outrageous" under New Hampshire law. Similarly, defendant identifies alleged pleading omissions under Wyoming and California law that it asserts are relevant to the application of the law set forth in *R.D.*, 875 P.2d 26, and *Tate*, 5 Cal. Rptr. 28. Defendant does not explain why these pleading errors would appropriately form the basis of a dismissal *with prejudice*. (In discussing Indiana law (see *Kimberlin*, 637 N.E.2d 121) defendant surprisingly asserts that plaintiffs' complaint did not "allege that the plaintiff's decedent ever suffered any physical harm as a result of the [d]efendant's conduct.") See *Bowe v. Abbott Laboratories, Inc.*, 240 Ill. App. 3d 382, 389 (1992) ("If, by amendment, a plaintiff can state a cause of action, a case should not be dismissed with prejudice on the pleadings.").

¶ 43    More fundamentally, this is not a choice-of-law case; we are not adopting portions of California, Indiana, or New Hampshire law wholesale. How New Hampshire law defines outrageous conduct is quite irrelevant to our inquiry. We are deciding whether, under Illinois

law, a plaintiff must establish that a defendant's conduct was the legal cause of the emotional distress that led to the decedent's suicide. Moreover, we emphasize here that there is no "substantial-factor rule" unique to the present circumstances; rather, the substantial-factor test is a way we analyze cause in fact. *Beretta*, 213 Ill. 2d at 404. We hold that, if plaintiffs establish that defendant's conduct proximately caused emotional distress that was a substantial factor in bringing about the decedent's suicide, plaintiffs may recover. Therefore, plaintiffs may maintain survival and wrongful death actions against defendant, any peculiarities of foreign law notwithstanding.

¶ 44　　　In its final two arguments, defendant urges that we affirm on a basis other than that relied upon by the trial court. It is true that we may affirm on any basis apparent in the record. *Messenger v. Edgar*, 157 Ill. 2d 162, 177 (1993). These arguments are based on plaintiffs' purported failure to properly allege the elements of intentional infliction of emotional distress. Even if we agreed with defendant regarding the sufficiency of the complaint (a proposition upon which we express no opinion beyond the suicide issue), it is not clear to us that the deficiencies identified by defendant would warrant a dismissal *with prejudice*. See *Bowe*, 240 Ill. App. 3d at 389. Defendant therefore provides us with no alternate basis to affirm the trial court.

¶ 45　　　　　　　　　　　　　　IV. CONCLUSION

¶ 46　　　In light of the foregoing, the order of the circuit court of Lake County is vacated, and this cause is remanded for further proceedings consistent with this opinion.

¶ 47　　　Vacated and remanded.