# Illinois Official Reports

## Supreme Court

---

### *Turcios v. The DeBruler Co.*, 2015 IL 117962

---

| | |
|---|---|
| Caption in Supreme Court: | MARIA TURCIOS *et al.*, Appellees, v. THE DeBRULER COMPANY, Appellant. |
| Docket No. | 117962 |
| Filed | May 21, 2015 |
| Decision Under Review | Appeal from the Appellate Court for the Second District; heard in that court on appeal from the Circuit Court of Lake County, the Hon. Margaret Mullen, Judge, presiding. |
| Judgment | Appellate court judgment reversed. Circuit court judgment affirmed. |
| Counsel on Appeal | Stephen A. Rehfeldt, of Mulherin, Rehfeldt & Varchetto, P.C., of Wheaton, for appellant. |
| | Richard D. Grossman, of Chicago, for appellees. |
| Justices | JUSTICE THEIS delivered the judgment of the court, with opinion. Chief Justice Garman and Justices Freeman, Thomas, Kilbride, Karmeier, and Burke concurred in the judgment and opinion. |

**OPINION**

¶ 1 This appeal involves an action for wrongful death predicated on a suicide, allegedly brought about by the defendant's intentional infliction of emotional distress. The circuit court of Lake County granted defendant's motion to dismiss the wrongful death action, along with the related survival action, with prejudice, finding that "wrongful death via suicide" is not cognizable in Illinois. The appellate court vacated the trial court's dismissal order and remanded for further proceedings. 2014 IL App (2d) 130331.

¶ 2 For the reasons stated below, we reverse the judgment of the appellate court and affirm the judgment of the trial court.

¶ 3 BACKGROUND

¶ 4 On June 15, 2011, Nelsyn Caceras, also known as Ricardo Ortiz, allegedly committed suicide in the apartment he and his wife, Maria Turcios, rented in a development known as the Colonial Park Apartments, located in Park City, Illinois. Approximately six months later, Turcios filed a complaint in the Lake County circuit court against defendant, The DeBruler Company, the agent for Colonial Park Apartments. Turcios filed the complaint on behalf of herself and the couple's two minor children. Plaintiffs sought damages for intentional infliction of emotional distress (count I), wrongful eviction (count II), and breach of contract (count III). Plaintiffs amended the complaint by adding count IV, seeking damages under the Wrongful Death Act (740 ILCS 180/.01 *et seq.* (West 2012)), and count V, seeking damages under the survival statute (755 ILCS 5/27-6 (West 2012)). Turcios was later appointed special administrator of her late husband's estate, and the complaint was once again amended.

¶ 5 At issue here are the wrongful death and survival counts in the second amended complaint.[1] According to the complaint, Turcios and Caceras entered into a written lease with defendant running from May 1, 2011, to April 30, 2012.[2] Plaintiffs took possession of the apartment on May 1, and tendered the required security deposit and first month's rent. Just 10 days into the lease, Caceras received a letter from Colonial Park Apartments purporting to be "an official 30 days notice" of eviction. The letter advised that "[c]onstruction begins June 10," and "unfortunately," Caceras and Turcios did not qualify for an unspecified "new program." Three additional letters followed. On May 20, the couple received a general reminder that they must vacate the apartment by June 9. On May 31, the couple was advised that the washers and dryers would be removed from the laundry room on June 13, and that "Colonial Park has decided to allow June 1-9, 2011 to be rent free." On June 7, the couple received a letter advising that demolition work would begin soon, but the family could be transferred to another unit with free rent for the month of June.[3] The couple received two telephone calls from defendant's agents pressuring them to move and, on June 1, 2011, the couple's tender of the June rent was refused.

_____

[1]For ease of discussion, we will refer to the second amended complaint simply as "the complaint."
[2]A copy of the lease is attached to the complaint.
[3]The letters from Colonial Park Apartments were written in Spanish. Copies of the letters, along with English translations, are attached to the complaint.

¶ 6        The complaint further alleges that the couple sought legal advice and were told that the lease was valid and that the landlord could not unilaterally terminate the lease. The couple also sought assistance through Catholic Charities, which had helped them navigate the leasing process because they did not speak English. The case manager, Juan Barrera, allegedly called defendant's agent, Gilena Borkoski, on May 12 and was told that the lease could be revoked at any time and was no longer valid. The complaint purportedly quotes portions of Barrera's case reports. His report from June 1 states that the couple reported "fatigue due to lack of sleep over this matter," and that they both expressed that they are "depressed, anxious and angry" because "they feel that management is not willing to work with them." Barrera's report from June 10, as quoted in the complaint, states:

> "Ricardo and Maria met with this case manager and were extremely upset. They mention that management called them last night and asked if the children were born in the US. The clients were told that a possibility of qualifying for the new subsidy program existed through the children. The clients were told to bring birth certificates and other documentation so that they might be able to talk about this and begin [the] application process. Both Ricardo and Maria felt that this was a set up and were reluctant to go meet with them at 10:00 a.m. At this point both Ricardo and Maria expressed anger and frustration at the management office. Ricardo also mentions that at one point Gilena Borkoski[,] the office manager[,] offered them $2000 to move out. They both felt discriminated [*sic*] and harassed[.] [T]hey were confused and felt they were given misleading information all along. They expressed that all they wanted was for management to honor the lease and give them a new unit; they felt that management just did not want them there anymore. Client wanted to seek legal advice because of all the events that occurred and did not want another family to have to go through this. Both Ricardo and Maria express that this contributed to lack of sleep and depression and anxiety. They were upset because their daughters were also very tense and would cry all the time. This [case manager] provided clients with the number to Fair Housing and to the Lake County Bar [A]ssociation for legal advice."

¶ 7        According to the complaint, demolition of the building began after June 10, 2011, despite the fact that the couple and their children were still occupying their apartment. "The demolition company tore into the outside walls of the building in which [the couple's] unit was located," and then began to demolish the surrounding units. On June 14, Caceras allegedly told his wife that he could not tolerate the situation any longer, but did not know what to do. The following day, Caceras committed suicide in the apartment, leaving a note that read: "Please forgive me my daughters, and you also Carmen. Sell the land and build the house." Plaintiffs subsequently vacated the apartment.

¶ 8        The wrongful death count states simply that, "[a]s a result of the wrongful acts of Defendant described above, Nelson [*sic*] Caceras committed suicide." This count seeks compensatory damages, as well as punitive damages, "in light of the intentional wrongdoing of Defendant."

¶ 9        The survival count alleges that defendant's conduct, in forcing Caceras and his family out of their validly rented apartment by demolishing the building around them, was extreme and outrageous which defendant knew, or should have known, would cause severe emotional distress. According to the complaint, Caceras did, in fact, experience severe emotional distress

- 3 -

including, but not limited to fright, grief, shame, worry, and insomnia, and he would have been entitled to pursue compensation from defendant for such distress had he survived. This count also sought punitive damages "in light of the intentional wrongdoing of Defendant."

¶ 10 Defendant filed a motion to dismiss the complaint, pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2012)). As to counts IV and V, defendant argued that under Illinois law, a plaintiff may not recover for a decedent's suicide following a defendant's alleged tortious conduct because suicide is an independent intervening act that the tortfeasor cannot be expected to foresee. In response, plaintiffs argued that in wrongful death cases involving intentional torts, as opposed to negligence, the trend in other jurisdictions is to permit such claims to proceed where the plaintiff can demonstrate that the defendant's intentionally tortious conduct caused severe emotional distress that was a substantial factor in bringing about the suicide.

¶ 11 The trial court granted defendant's motion as to counts IV and V, dismissing these counts with prejudice.[4] The trial court found that "[u]nder Illinois law, there is no cause of action for wrongful death via suicide, or survival claims." On plaintiffs' motion, the trial court made a Rule 304(a) finding of appealability. See Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010). Plaintiffs appealed.

¶ 12 The appellate court vacated the trial court's dismissal order. 2014 IL App (2d) 130331, ¶ 39. The appellate court recognized that, in a wrongful death action based on the defendant's negligence, the decedent's suicide is considered an independent intervening act that the tortfeasor cannot be expected to foresee and, accordingly, such an action cannot be maintained as a matter of law. *Id.* ¶ 16. The appellate court, however, declined to extend this *per se* bar where the wrongful death action is based on the defendant's intentionally tortious conduct, expressly rejecting defendant's argument that under *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33 (1994), the concept of foreseeability limits the liability of an intentional tortfeasor. 2014 IL App (2d) 130331, ¶¶ 32-33, 38-39. The appellate court thus held that "where a plaintiff can satisfy the elements of the tort of intentional infliction of emotional distress and the emotional distress is a substantial factor in causing a decedent's suicide, such causes of action are cognizable in this state." *Id.* ¶ 39. The appellate court believed it best to allow the trial court to reconsider its ruling on defendant's motion to dismiss in light of the appellate court's holding. *Id.*

¶ 13 We allowed defendant's petition for leave to appeal. See Ill. S. Ct. R. 315 (eff. July 1, 2013).

¶ 14 ANALYSIS

¶ 15 A motion to dismiss under section 2-615 of the Code challenges only the legal sufficiency of the complaint. *Citizens Opposing Pollution v. ExxonMobil Coal U.S.A.*, 2012 IL 111286, ¶ 22. The question presented on review is whether the allegations of the complaint, taken as true and viewed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted. *Kanerva v. Weems*, 2014 IL 115811, ¶ 33. A cause of action will be dismissed under section 2-615 only where it is apparent that no set of facts could

---

[4]The trial court denied defendant's motion as to counts I, II, and III.

be proven that would entitle the plaintiff to relief. *Id.* We review *de novo* the trial court's order granting defendant's motion to dismiss plaintiffs' wrongful death and survival claims. See *id.*

¶ 16    Section 1 of the Wrongful Death Act provides, in relevant part:

"§ 1. Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who or company or corporation which would have been liable if death had not ensued, shall be liable to an action for damages ***." 740 ILCS 180/1 (West 2012).

¶ 17    A cause of action under the Wrongful Death Act is brought by the personal representative of the decedent. 740 ILCS 180/2 (West 2012). The purpose is to provide the surviving spouse and next of kin compensation for the pecuniary losses suffered by reason of the decedent's death. *Carter v. SSC Odin Operating Co.*, 2012 IL 113204, ¶ 32. Unlike an action under the survival statute which allows a representative of the decedent to pursue those statutory or common law claims that accrued prior to the decedent's death, an action under the Wrongful Death Act does not accrue until death. *Id.* ¶ 34. As this court has further explained:

"If the decedent had no right of action at the time of his or her death, the personal representative has none under the Wrongful Death Act. Thus, the 'injury' that the personal representative alleges caused the decedent's death must be the same 'injury' that the decedent suffered prior to his or her death." *Williams v. Manchester*, 228 Ill. 2d 404, 421 (2008).

¶ 18    In the present case, plaintiffs have been less than clear about the "injury" that precipitated decedent's death. Although the survival count is predicated on the intentional infliction of emotional distress, the wrongful death count itself does not identify any injury to decedent that caused his death. Nor does that count identify on what legal theory defendant's conduct, described in the complaint, was "wrongful." In a conclusory fashion, the complaint states only that, "[a]s a result of the wrongful acts of Defendant described above," Caceres committed suicide.

¶ 19    In their brief before this court, plaintiffs initially identify the intentionally wrongful conduct of defendant as "the constructive eviction of Plaintiffs and their decedent, coupled with actual demolition of their validly rented premises." This conduct, plaintiffs add, "caused severe emotional distress which was a substantial factor" in decedent's suicide. In a later portion of their brief, plaintiffs state, "[I]t is certainly true that the underlying tort in this case is intentional infliction of emotional distress." Based on these statements, we will treat the injury underlying plaintiffs' wrongful death claim as one for intentional infliction of emotional distress. We note that the appellate court limited its holding to cases involving this particular tort. 2014 IL App (2d) 130331, ¶ 39. Having determined the underlying injury, we will proceed to consider whether plaintiffs' wrongful death claim may proceed where the immediate cause of death was suicide.

¶ 20    Both parties recognize the general rule, applicable in negligence actions, that the injured party's voluntary act of suicide is an independent intervening act which is unforeseeable as a matter of law, and which breaks the chain of causation from the tortfeasor's negligent conduct. *Little v. Chicago Hoist & Body Co.*, 32 Ill. 2d 156, 158-59 (1965); accord *Luss v. Village of Forest Park*, 377 Ill. App. 3d 318, 332 (2007); *Kleen v. Homak Manufacturing Co.*, 321 Ill.

App. 3d 639, 642-44 (2001); *Moss v. Meyer*, 117 Ill. App. 3d 862, 864 (1983). This rule has been applied in wrongful death actions based on conduct by the defendant amounting to negligence, provided the defendant was under no duty to decedent to prevent the suicide. Compare *Chalhoub v. Dixon*, 338 Ill. App. 3d 535, 539-40 (2003) (assuming defendant was negligent in the handling and storage of a firearm, defendant was not liable for decedent's suicide which was an independent intervening act), with *Winger v. Franciscan Medical Center*, 299 Ill. App. 3d 364, 375 (1998) (decedent's suicide would not bar wrongful death action based on psychiatric malpractice in failing to supervise decedent with known suicidal tendencies).

¶ 21    The parties disagree as to whether this rule also applies where, as here, plaintiffs allege that defendant's conduct was intentionally tortious and not merely negligent. Renewing an argument rejected by the appellate court, defendant contends that under *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33 (1994), the concept of foreseeability, embodied in the doctrine of proximate causation, limits the liability of both negligent and intentional tortfeasors. Defendant contends that because suicide is deemed an unforeseeable event as a matter of law, decedent's suicide in this case broke the chain of causation precluding plaintiffs' wrongful death claim.

¶ 22    Plaintiffs argue that defendant's reading of *Heinold* is misguided, and that an intentional tortfeasor's liability extends beyond the limits of foreseeability. Citing case law from other jurisdictions, plaintiffs maintain that as long as the intentional tortfeasor's conduct was a substantial factor, *i.e.*, a cause in fact, of the decedent's suicide, liability for wrongful death will lie.

¶ 23    The term "proximate cause" embodies two distinct concepts: cause in fact and legal cause. *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 455 (1992). When considering cause in fact, courts generally employ either the traditional "but for" test or the "substantial factor" test. *Nolan v. Weil-McLain*, 233 Ill. 2d 416, 431 (2009). Under the "but for" test, " 'a defendant's conduct is not the cause of an event if the event would have occurred without it.' " *Id.* (quoting *Thacker v. UNR Industries, Inc.*, 151 Ill. 2d 343, 354 (1992)). Under the "substantial factor" test, "the defendant's conduct is said to be a cause of an event if it was a material element and a substantial factor in bringing the event about." (Internal quotation marks omitted.) *Id.*

¶ 24    In contrast, legal cause involves an assessment of foreseeability. *Lee*, 152 Ill. 2d at 456. Courts ask whether the injury is the type of injury that a reasonable person would see as a "likely result" of his or her conduct, or whether the injury is so "highly extraordinary" that imposing liability is not justified. (Internal quotation marks omitted.) *Id.* See also *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 395 (2004) (legal cause "is established only if the defendant's conduct is so closely tied to the plaintiff's injury that he should be held legally responsible for it" (internal quotation marks omitted)). "The question is one of policy—How far should a defendant's legal responsibility extend for conduct that did, in fact, cause the harm?" *Id.* See also *Prodromos v. Everen Securities, Inc.*, 389 Ill. App. 3d 157, 171 (2009) ("Because the consequences of every action stretch forward endlessly through time and the causes of every action stretch back to the dawn of human history, the concept of proximate cause was developed to limit the liability of a wrongdoer to only those injuries reasonably related to the wrongdoer's actions.").

- 6 -

¶ 25    Plaintiffs' view, under which legal cause plays no role in the liability of an intentional tortfeasor, essentially creates open-ended and limitless liability for injury, no matter how abnormal, extraordinary, irregular, or remote the injury may be. In *Heinold*, however, this court considered and rejected the notion of liability without limits.

¶ 26    *Heinold* involved claims for breach of fiduciary duty and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1979, ch. 121½, ¶ 261 *et seq.*) against the defendant, a commodities firm. The plaintiffs alleged that the defendant intentionally misrepresented the nature of a service fee charged in connection with the sale of high-risk foreign options. The defendant argued that the plaintiffs were not entitled to their full investment losses because the plaintiffs failed to establish that any misrepresentation regarding the service fee proximately caused those losses. The plaintiffs argued, however, that in Illinois they need only show "but for" causation. We rejected the plaintiffs' argument. *Heinold*, 163 Ill. 2d at 58-59.

¶ 27    We framed the issue as "what type of causation plaintiffs must show to recover for misrepresentation." *Id.* at 58. At the outset, we recognized a " 'fundamental principle applicable alike to breaches of contract and to torts' " that a right of action requires a wrongful act by the defendant and a loss resulting from that act. *Id.* (quoting *Town of Thornton v. Winterhoff*, 406 Ill. 113, 119 (1950)). Importantly, "the injury suffered by the plaintiff must be the natural and not merely a remote consequence of the defendant's act." (Internal quotation marks omitted.) *Id.* This principle, we stated, "is applicable to actions for negligence as well as intentional torts, such as fraud." *Id.* at 59. We concluded that "plaintiffs must prove that a defendant's actions proximately caused their injuries before they can recover in tort, even in instances of intentional torts where fiduciaries are involved." *Id.* We held that the defendant's misrepresentations only induced the plaintiffs to pay an additional fee, and did not induce the plaintiffs to assume the risk of the volatile options market they entered. *Id.* at 64.

¶ 28    In *Heinold*, the plaintiffs further argued that they should recover all of their investment losses because the defendant's conduct was intentional, and "intentional tortfeasors are commonly liable even for unforeseeable consequences of their conduct." *Id.* We rejected this argument, recognizing that "even intentional tortfeasors do not become the insurers of safety for wronged plaintiffs." *Id.* (citing *Johnson v. Greer*, 477 F.2d 101, 106 (5th Cir. 1973)). Thus, under *Heinold*, "but for" causation is insufficient to establish an intentional tortfeasor's liability for injury to the plaintiff. Such injury must have been foreseeable, and not merely a remote consequence of the defendant's conduct.

¶ 29    The appellate court in the instant case read *Heinold* narrowly, concluding that our discussion of intentional tortfeasors' liability was confined to a particular tort: fraud. 2014 IL App (2d) 130331, ¶ 33. To be sure, our discussion in *Heinold* referenced "intentional torts, such as fraud," and relied in part on appellate court opinions also involving fraud. *Heinold*, 163 Ill. 2d at 59. But in rejecting the plaintiffs' argument in *Heinold* that intentional tortfeasors are liable for even unforeseen consequences, we relied not on a fraud case, but a false imprisonment case. *Id.* at 64 (citing *Johnson*, 477 F.2d at 106-07) (civil rights action based on false imprisonment in a psychiatric facility)). Thus, our discussion of proximate cause was not animated solely by the nature of one particular tort, but by the nature of intentional torts generally.

¶ 30    Although the appellate court here may have been reluctant to extend the reach of *Heinold* beyond the tort at issue in that case, we do not believe that the *Heinold* court intended such a limitation. Moreover, no reasoned basis exists to treat the underlying tort in this case, intentional infliction of emotional distress, differently than fraud for purposes of determining the extent of the tortfeasor's liability. Indeed, Illinois case law recognizes that to succeed on a claim for intentional infliction of emotional distress, the defendant's conduct must proximately cause such distress. See *McGrath v. Fahey*, 126 Ill. 2d 78, 93 (1988) (observing that "a jury could reasonably conclude that such distress proximately resulted from defendants' course of conduct"); *Duffy v. Orlan Brook Condominium Owners' Ass'n*, 2012 IL App (1st) 113577, ¶ 36 (plaintiff must prove, *inter alia*, that "the defendant's conduct actually and proximately caused the plaintiff's distress" (citing *Ulm v. Memorial Medical Center*, 2012 IL App (4th) 110421, ¶ 39)).

¶ 31    Because an intentional tortfeasor's liability is limited by the concept of foreseeability embodied in the doctrine of proximate causation, a cause of action for wrongful death predicated on a suicide allegedly brought about by the intentional infliction of emotional distress is subject to the general rule that suicide is unforeseeable as a matter of law. Thus, the plaintiff bears a heavy burden of pleading and proving facts that would overcome application of the rule. See *Luss*, 377 Ill. App. 3d at 332-33 (wrongful death plaintiff failed to provide any factual explanation of how the actions of Wal-Mart employees, in committing an intentional tort (battery) against the decedent, could have caused the decedent to become so bereft of reason as to commit suicide).

¶ 32    We recognize that courts in some jurisdictions have taken a different approach, and have declined to allow the doctrine of foreseeability to limit an intentional tortfeasor's liability in a wrongful death case involving suicide. Plaintiffs urge this court to follow this "unanimous consensus" of persuasive authority. As discussed below, the cases on which plaintiffs rely are not unanimous in the standards they have adopted, and apart from the occurrence of a suicide, they are factually distinct from the case before us.

¶ 33    In *Tate v. Canonica*, 5 Cal. Rptr. 28 (Cal. Dist. Ct. App. 1960), the earliest of the cases that plaintiffs cite, the defendants intentionally made threats, statements and accusations against the decedent for the purpose of harassing, embarrassing, and humiliating him in the presence of his friends, relatives and business associates. The California appeals court held that, where a defendant intends to cause serious mental distress or serious physical suffering, and does so, and the mental distress is a substantial factor (a cause in fact) in bringing about the suicide, a cause of action for wrongful death results. *Id.* at 36.

¶ 34    *Mayer v. Town of Hampton*, 497 A.2d 1206 (N.H. 1985), involved claims of false imprisonment, assault and battery, and false arrest against a municipality and three of its police officers who, without a search warrant, entered a home and forced to the floor the 21-year-old decedent who had recently been discharged from a mental health institution, threatening to kill him or others in the house. The man was arrested, and released after a short investigation. Sixteen hours later he committed suicide. The New Hampshire Supreme Court adopted the reasoning of *Tate*, but added a requirement: the conduct of the defendant must be extreme and outrageous. *Mayer*, 497 A.2d at 1210-11.

¶ 35    In *Rowe v. Marder*, 750 F. Supp. 718 (W.D. Pa. 1990), the federal district court predicted that the Pennsylvania Supreme Court would allow "some recovery" for suicide caused by

intentional torts, and would likely align itself with California and New Hampshire. *Id.* at 724. The federal court, however, was not required to apply the rules adopted in California and New Hampshire, finding that the plaintiff had failed to articulate any underlying intentional tort. The facts revealed only that the sickly decedent had been led astray by a malevolent and misguided sister. *Id.* at 727. We note that *Rowe* has not been cited in a single reported Pennsylvania state court case.

¶ 36    In *R.D. v. W.H.*, 875 P.2d 26 (Wyo. 1994), the decedent's stepfather had sexually abused her throughout her childhood, adolescence, and early adulthood, causing her to develop psychiatric difficulties, ultimately leading to her suicide. The Wyoming Supreme Court recognized that a "number of variations of the substantial factor test seem to exist." *Id.* at 30. Although *R.D.* followed the rule announced in *Tate*, it extended the rule to encompass cases where the intentional tort causes an emotional or psychiatric illness that is a substantial factor in bringing about the suicide, even where the defendant does not intend to cause the emotional or psychiatric illness. *Id.* at 31.

¶ 37    In *Kimberlin v. DeLong*, 637 N.E.2d 121 (Ind. 1994), a bomb concealed in a gym bag abandoned in a parking lot exploded, injuring and disfiguring decedent, who committed suicide four years later. At the time of the wrongful death action, the perpetrator had already been found guilty in a criminal proceeding. The Indiana Supreme Court held that a wrongful death action may be maintained where a defendant's willful tortious conduct was intended to cause the victim physical harm and was a substantial factor in bringing about the suicide. *Id.* at 128.

¶ 38    Finally, plaintiffs cite *Collins v. Village of Woodridge*, 96 F. Supp. 2d 744 (N.D. Ill. 2000), in which the federal district court considered whether a police officer's suicide extinguished civil rights claims based on sexual harassment and retaliation. In the absence of case law from this court, the district court looked to case law from other states, and concluded that the decedent's suicide would not be considered a supervening cause, at least where the plaintiff can demonstrate that the defendant's intentional conduct caused severe emotional distress that was a substantial factor in bringing about the suicide. *Id.* at 756. *Collins*, of course, is not controlling on an issue of Illinois tort law. See *Sundance Homes, Inc. v. County of Du Page*, 195 Ill. 2d 257, 276 (2001).

¶ 39    Despite the clear differences among the standards adopted in the foregoing cases, plaintiffs contend that their holdings can be distilled down into a single principle of tort liability: If the defendant intends to harm the plaintiff, the defendant is liable for whatever consequences follow, including suicide, whether foreseeable or not, as long as the defendant's conduct was a substantial factor (a cause in fact) in bringing about that harm. At oral argument, however, plaintiffs conceded that some line drawing must be made, and that an intentional tortfeasor is not necessarily liable for *all* consequences flowing from the defendant's conduct.

¶ 40    Plaintiffs' concession aside, the foregoing cases do not persuade us that *Heinold* was wrongly decided, or that its conclusion that proximate causation is applicable to cases alleging fraud, should not also apply to cases alleging intentional infliction of emotional distress. Accordingly, we hold that where, as here, a plaintiff seeks to recover damages for wrongful death based on the decedent's suicide allegedly brought about through the intentional infliction of emotional distress, the plaintiff must do more than plead facts which, if proven, would establish that the defendant's conduct was a cause in fact of the suicide. The plaintiff must

plead facts which, if proven, would overcome application of the general rule that suicide is deemed unforeseeable as a matter of law. In other words, a plaintiff must plead facts demonstrating that the suicide was foreseeable, *i.e.*, that it was a likely result of the defendant's conduct.

¶ 41 We observe that intentional infliction of emotional distress, by its very nature, appears to have a slightly closer connection to suicide than other intentional torts. The tort requires that the distress inflicted must be so severe "that no reasonable man could be expected to endure it." *Public Finance Corp. v. Davis*, 66 Ill. 2d 85, 90 (1976). Notwithstanding the ostensible connection between severe emotional distress and suicide, we also recognize that a suicide may result from a complex combination of psychological, psychiatric, chemical, emotional, and environmental factors. Thus, we believe it is the rare case in which the decedent's suicide would not break the chain of causation and bar a cause of action for wrongful death, even where the plaintiff alleges the defendant inflicted severe emotional distress. The case before us is not one of those rare cases.

¶ 42 Plaintiffs alleged that defendant pressured Turcios and decedent to vacate their apartment shortly after they took possession pursuant to a written lease. Although defendant initially sent what purported to be a 30-day notice of eviction, defendant later offered the couple free rent for the first nine days of June, and subsequently offered them the option of transferring to another unit with free rent for the entire month of June. Defendant also offered a $2,000 incentive to move. Defendant advised plaintiffs that demolition of the building would commence in early June, which it did. Decedent committed suicide after demolition began. Without regard to whether these allegations could support a claim for intentional infliction of emotional distress as to decedent, an issue that was not raised in the trial court, we conclude that these allegations are insufficient to allow plaintiffs' wrongful death action to proceed. As a matter of law, decedent's suicide was not a reasonably foreseeable result of defendant's alleged conduct in breaking the lease and pressuring the couple to vacate the apartment. Accordingly, the trial court properly dismissed count IV with prejudice.

¶ 43 As to count V of plaintiffs' complaint—a survival action predicated on intentional infliction of emotional distress—plaintiffs make no argument that this count may and should proceed independent of the wrongful death count. For this reason, we also affirm the trial court's dismissal with prejudice of count V.

¶ 44 Appellate court judgment reversed.

¶ 45 Circuit court judgment affirmed.