2016 IL App (1st) 150813

No. 1-15-0813

Fourth Division
March 3, 2016

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| SAM EL-ZOOBI, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 L 3156 |
| | ) | |
| UNITED AIRLINES, INC., an Illinois | ) | Honorable |
| Corporation, | ) | John P. Callahan, |
| | ) | Judge Presiding. |
| Defendant-Appellee. | ) | |

_____

JUSTICE COBBS delivered the judgment of the court, with opinion.
Presiding Justice McBride and Justice Howse concurred in the judgment and opinion.

**O P I N I O N**

¶ 1     This case is before us on appeal of the trial court's order granting defendant United Airlines, Inc.'s motion to dismiss plaintiff Sam El-Zoobi's tortious interference with a business relationship and intentional infliction of emotional distress claims pursuant to section 2-619 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2012)). Plaintiff alleged that defendant, through its agent, filed a report with his employer,

the Federal Aviation Administration (FAA), containing false information concerning his failure to comply with a crew member instruction on board an international flight from Washington D.C. to Beijing, China. Defendant filed a motion to dismiss asserting that these claims are governed by the Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, S. Treaty Doc. No. 106-45, 2242 U.N.T.S. 309 (Montreal Convention), and plaintiff failed to state a claim under the Convention's terms. The court agreed and dismissed the complaint. Plaintiff appeals contending that his claims are not governed by the Montreal Convention and consequently defendant is subject to liability under local laws. For the following reasons, we affirm.

¶ 2                                                    BACKGROUND

¶ 3            Although the parties dispute many of the details concerning the circumstances of this case, they agree on the material facts at issue. On March 18, 2012, plaintiff was a passenger on United Airlines flight 897 from Dulles International Airport in Washington D.C. to Beijing, China. Brenda Dismuke, the "purser" (*i.e.*, the flight attendant in charge), testified in her deposition that prior to take off, an announcement was made for all passengers to turn off their electronic devices. Thereafter, plaintiff contends that he asked United flight attendant Janet Tucker if his phone could be in "airplane mode." Defendant maintains, however, that Tucker observed plaintiff with his cell phone on and asked him to turn it off. Instead, he insisted that the cell phone was in "airplane mode," which he argued was sufficient. Regardless, it is undisputed that at some point Tucker asked plaintiff to turn off his cell phone and plaintiff refused. Tucker then informed Dismuke that plaintiff would not turn off his cell phone. Dismuke made another general announcement for passengers to turn off all electronic devices. She then approached plaintiff and asked him to turn off his phone. Again,

he refused. Dismuke went to the cockpit and told Captain Donald Roberts that she had an issue with plaintiff because he refused to turn off his cell phone. Captain Roberts sent another pilot to speak to plaintiff. The pilot returned and told Dismuke and Captain Roberts that plaintiff had informed him that he was an employee of the FAA. Captain Roberts then told Dismuke to solve the problem and was prepared to bring the plane, which was taxiing, back to the gate if the issue was not resolved. Dismuke testified that she went back to plaintiff and requested that he turn off his cell phone. She stated that at first plaintiff was dismissive and would not look at her or respond to her. Because of this behavior she was concerned that he would not follow her directions in an emergency situation. Eventually, plaintiff told her that his cell phone was off. Dismuke then asked him if he would listen to her in case of an emergency and he told her that he would. With this assurance, Dismuke felt comfortable that he would comply with her orders and she returned to Captain Roberts and told him that "I think it'll be fine" and that the phone was off. According to plaintiff, however, the flight took off after his conversation with the pilot and he did not speak to Dismuke again until later in the flight.

¶ 4    Approximately a few hours into the flight, Dismuke approached plaintiff. She asked his name and for his FAA credentials. Plaintiff told her that he was a program manager for the FAA but that he could not produce any identification. He did provide his work telephone number. At some point during the flight, Dismuke decided that she was going to report plaintiff to the FAA. The flight arrived in Beijing without further incident.

¶ 5    Dismuke testified that immediately upon arriving at her hotel, she went to the FAA website and filed a complaint against plaintiff on the agency's help hotline. Plaintiff points

out that a heading on the copy of the e-mail produced by the FAA has a March 28, 2012, date which is 10 days after the flight arrived. In its entirety, the complaint states:

"I WAS THE PURSER ON THIS FLIGHT. FA TOLD THIS PASSENGER IN 11 A THAT HE WOULD HAVE TO TURN OFF HIS PHONE. HE SAID HE DIDN'T NEED TO. THEN HE SAYS IT IS OK TO HAVE PHONE IN AIRPLANE MODE. SHE SAID NO[.] HE INSISTED. I WENT BACK THERE TO TALK TO HIM, HE WAS ARROGANT AND DID NOT WANT TO FOLLOW INSTUCTIONS. THE PILOT HAD TO COME OUT[.] HE IDENTIFED HIMSELF AS "FAA" INSINUATING THAT HE WAS THE ONE THAT KNEW THE RULES AND HE COULD DO SO. WE HAD TO DELAY THE FLIGHT TO HANDLE YOUR EMPLOYEE, MR. ELZOOBI. HE WAS RUDE, ARROGANT, AND NON COMPLIANCE [*sic*]. I TOLD THE CAPTAIN THAT I WOULD ALLOW HIM TO STAY ON BOARD IF HE WOULD COMPLY WITH WHATEVER I ASKED OF HIM IN AN EMERGENCY. HE TOLD ME I WAS MAKEING [*sic*] MORE OF THE SITUATION THAN I NEEDED TO BUT HE DOESN'T UNDERSTAND EVENTENTLY [*sic*][.] WE HAVE RULES AND WE ARE UNDER A TIME FACTOR TO DEAL WITH HIM. WE WERE ALREADY TAXIING TO TAKE OFF. HE NEEDS TO DISCIPLINED [*sic*] FOR HIS BEHAVIOR AND IMPLYING THAT HE WAS 'THE FAA'! CALL ME WITH QUESTIONS."

¶ 6    Dismuke testified that she decided to file the complaint because either plaintiff was an employee of the FAA, in which case the agency should know that he was not following the rules and was not compliant, or he was not a FAA employee but was impersonating an employee, which she thought would also concern the agency. She further explained that if he

was an employee, the FAA could address his behavior and it would not be an issue for a subsequent flight crew.

¶ 7    Thereafter, the FAA contacted United and United requested that Dismuke file a flight attendant irregularity report through United. She did so and that report was almost identical to the complaint she filed with the FAA but additionally stated, *inter alia*, that:

> "[plaintiff] WOULD NOT PRODUCE AN ID AND AFTER ASKING HIM REPEATEDLY HE FINALLY SAID THAT HE DIDN'T HAVE IT. THEN I ASKED HIM TO WRITE HIS INFORMATION FOR ME AND WHAT DEPARTMENT. FINALLY AFTER MUCH PRODING [*sic*] HE SAID HE WAS A PROGRAM MANAGER WITH THE FAA. HE WAS TRYING TO IMPERSONATE A FAAA [*sic*] INSPECTOR AND TRYING TO INTIMIDATE US."

As a result of the complaint and follow-up investigation, the FAA sent plaintiff a "Notice of Proposed Civil Penalty" in the amount of $6,000. Subsequently, after internal review of the incident, the FAA withdrew the "Notice of Proposed Civil Penalty."

¶ 8    On March 18, 2014, plaintiff filed a complaint in the circuit court of Cook County against defendant alleging tortious interference with a business relationship and intentional infliction of emotional distress. He alleged that because of the "false complaint," he lost an opportunity for a promotion and suffered and continues to suffer loss of advancement as well as "severe emotional distress." Thereafter, defendant filed a motion to dismiss pursuant to section 2-619 of the Code asserting that the Montreal Convention governs plaintiff's claims and that he failed to state a claim under the Convention's terms. *Id.*; 735 ILCS 5/2-619 (West 2012). The court granted defendant's motion and concluded that the Montreal Convention controlled in

this case because the alleged harm was caused by events that occurred on board an international flight. Plaintiff appeals the judgment of the circuit court.

¶ 9                                                ANALYSIS

¶ 10        The primary issue on appeal is whether the Montreal Convention governs this case. Plaintiff contends that it does not apply because the alleged harm was caused by defendant's agent filing an allegedly false report against him to his employer, which did not occur on the plane. Defendant maintains that the convention does apply because the alleged harm was caused by his behavior on board the plane which led Dismuke to filing the complaint.

¶ 11        A section 2-619 motion to dismiss admits the legal sufficiency of the complaint but asserts an affirmative defense or other matter that avoids or defeats the plaintiff's claim. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006). An affirmative matter is one which completely negates the cause of action. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). When ruling on a section 2-619 motion, the court construes the pleadings in the light most favorable to the nonmoving party and the motion should only be granted if there is no set of facts that would support a cause of action. *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 31. Section 2-619 motions present questions of law, which we review *de novo*. *Id.*

¶ 12        The Montreal Convention succeeded the Warsaw Convention and came into effect on November 4, 2003. *Benjamin v. American Airlines, Inc.*, 32 F. Supp. 3d 1309, 1314-15 (S.D. Ga. 2014). As a treaty of the United States, it is the supreme law of the land. *Id.* at 1315. The purpose of the Montreal Convention is to provide uniform rules governing claims arising out of international air transportation. *Id.* at 1314-15; *El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 169 (1999). It represents a balance of the airlines' need to limit

potentially endless liability and passengers' interests in recovering for injuries. *Tsui Yuan Tseng,* 525 U.S. at 170. The Convention applies to personal injury actions when the alleged harm occurred on board an international flight or in the process of embarking or disembarking from an international flight. *Kruger v. Virgin Atlantic Airways, Ltd.,* 976 F. Supp. 2d 290, 301 (E.D.N.Y. 2013). For these claims, the Montreal Convention limits airline carriers' liability to where the harm is caused by an "accident" and results in bodily injury. *Id.* at 301-03.[1] Article 17 is "identical to its predecessor, the Warsaw Convention, and precedents discussing this article of the Warsaw Convention are generally also applicable to the Montreal Convention." *Kruger*, 976 F. Supp. 2d at 301.

¶ 13        The United States Supreme Court has held that when a claim falls within the scope of the Montreal Convention, there can be no recovery under state law. *El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 171 (1999). Thus, a passenger's exclusive remedy is through the Montreal Convention and all other claims are preempted. *Id.* This is true even if the terms of the convention would not allow recovery. *Kruger*, 976 F. Supp. 2d at 318. In *Tsui Yuan Tseng*, the Court reasoned:

"Construing the Convention, *** to allow passengers to pursue claims under local law when the Convention does not permit recovery could produce several anomalies. Carriers might be exposed to unlimited liability under diverse legal regimes, but would be prevented, under the treaty, from contracting out of such liability. Passengers injured physically in an emergency landing might be subject to the liability caps of the

---

[1] Article 17 of the Montreal Convention, in pertinent part, provides, "[t]he carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking." Montreal Convention, art. 17.

Convention, while those merely traumatized in the mishap would be free to sue outside of the Convention for potentially unlimited damages." *Tsui Yuan Tseng*, 525 U.S. at 157.

¶ 14     To determine whether a claim falls within the scope of the Montreal Convention, we consider the event that caused the injury not the occurrence of the injury itself. *Air France v. Saks*, 470 U.S. 392, 398 (1985). We apply a proximate cause analysis to ascertain the cause of an injury. *Cush v. BWIA International Airways Ltd.*, 175 F. Supp. 2d 483, 487 (E.D.N.Y. 2001). Proximate cause consists of "cause in fact" and "legal cause." *Turcios v. The DeBruler Co.*, 2015 IL 117962, ¶ 23. Cause in fact is generally established by the " 'but for' test" or the " 'substantial factor' test." *Id.* Under the " 'but for' test," an event is not the cause of an injury if the injury would have occurred without it. *Id.* Under the " 'substantial factor' test," an event is a cause of an injury if it was a material element and a substantial factor in bringing about the injury. *Id.* By contrast, legal cause looks to the foreseeability of the alleged harm and courts assess whether a reasonable person would see that type of injury as a likely result of his or her conduct. *Id.* ¶ 24.

¶ 15     The parties have provided case law regarding *where* a triggering event occurred to argue that the causal event occurred either off or on the plane, respectively. These cases consider factors such as "(1) the activity of the passengers at the time of the accident; (2) the restrictions, if any, on their movements; (3) the imminence of actual boarding; [and] (4) the physical proximity of passengers to the gate." (Internal quotation marks omitted.) *Aquino v. Asiana Airlines, Inc.*, 130 Cal. Rptr. 2d 223, 228-29 (Cal. Ct. App. 2003). We find this case law inapposite. The relevant inquiry at issue here is *what* is the cause of plaintiff's alleged harm. If the sole cause is Dismuke's physical act of filing the complaint, as plaintiff contends, then it clearly occurred off the plane. If, however, the cause is the altercation on the plane,

which led Dismuke to filing the complaint, as defendant maintains, then the cause indisputably occurred on the plane.

¶ 16        Although analyzing a different issue, we find the United States Supreme Court's guidance on the cause of an injury in *Saks* instructive. 470 U.S. at 398. In *Saks*, the court examined the cause of an alleged injury to assess whether it was from an "accident" or merely an "occurrence" for purposes of the Montreal Convention. The court explained that "[a]ny injury is the product of a chain of causes, and we require only that the passenger be able to prove that some link in the chain was an unusual or unexpected event external to the passenger." *Id.* at 406. Similarly, here, although we are not determining the cause of the alleged injuries to analyze whether it was an "accident," we look to the entire "chain of causes" of plaintiff's injury to determine whether a link in the causal chain occurred on board the airplane.

¶ 17        Here, both plaintiff's and defendant's versions of the facts indicate that a verbal altercation occurred on board the plane. Accepting plaintiff's version, however, as we must: first Tucker asked plaintiff to turn off his phone and he refused; then Dismuke asked plaintiff to turn off his phone and he refused; and eventually a pilot asked him to turn off his phone, at which point he finally turned it off. It is apparent that plaintiff told a member of the flight staff that he was an employee of the FAA. Plaintiff maintains that when Dismuke approached him during the flight to ask him for his FAA employee ID, which he did not have, she "harassed" him. He ultimately told her he was a FAA program manager and gave her his work telephone number. Then, sometime between 1 and 10 days later, Dismuke filed a complaint against plaintiff containing allegedly false information.

¶ 18        Regardless of what occurred on the plane, it is clear that but for those events, Dismuke would not have filed the complaint and plaintiff would not have suffered his alleged injury.

Furthermore, it is reasonably foreseeable that a flight attendant would file a report against a passenger that he or she believes is unruly. Defendant argues, and we agree, that the conduct on the plane cannot be separated from the physical act of filing the complaint. The events on the plane were not remote as plaintiff argues, but rather were the first causal link in the chain that led Dismuke to file the complaint which allegedly caused plaintiff's injuries. Additionally, we note that plaintiff asserts that the complaint contained "false" information regarding what occurred on the plane. It would be impossible for him to prove his claims without presenting evidence of the events on the plane and that Dismuke's version was "false." To now claim that filing the complaint is independent of those events is illogical.

¶ 19    We are mindful that it is uncertain when exactly the complaint was filed. Dismuke testified that she filed it immediately upon arriving at her hotel in Beijing. The heading on the e-mail that was produced by the FAA has the date of March 28, 2012. Plaintiff asserts that this discrepancy creates a question of fact that precludes this case from being dismissed. We do not agree. Even if Dismuke did not file the claim immediately, the events on board the plane prompted her to file it. We therefore find that plaintiff's alleged harm was caused by events that took place on board an international flight, and the Montreal Convention governs.

¶ 20    To hold otherwise would encourage inconsistent results that undermine the purpose of the Montreal Convention. The Convention's objective is to provide uniform rules for events that occur on international flights, including disagreements between flight attendants and passengers, and to limit airlines' liability. Requiring flight attendants to file complaints before they disembark in order to avoid liability in the event that a passenger alleges the complaint is false would be cumbersome and interrupt their other important duties.

¶ 21 Plaintiff makes the additional argument that article 25 of the Montreal Convention provides an exception that allows passengers to bring claims under local law for wilful misconduct, which includes his intentional tort claims. Defendant contends that this argument is waived on appeal because it was not argued in the court below. We agree. Our review of the record reveals that plaintiff did not argue that his claims fell under an exception to the Convention in the circuit court, and thus, it cannot be raised for the first time on appeal. *Jackson v. Hooker*, 397 Ill. App. 3d 614, 617 (2010).

¶ 22 In holding that the Montreal Convention controls, we affirm the court's dismissal of plaintiff's complaint. Plaintiff concedes that neither his tortious interference with a business relationship nor his intentional infliction of emotional distress claims, which do not allege an "accident" or bodily injury, can stand under the terms of the Convention.

¶ 23                                    CONCLUSION

¶ 24 For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 25 Affirmed.